**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**NEW YORK CENTRAL MUTUAL FIRE INSURANCE CO.,**

**Appellant,**

**v.** **1:06-CV-1041 (FJS)**

**GAIL EDWARDS a/k/a GAIL RAFFIANI,**

**Appellee.**

---

**APPEARANCES** **OF COUNSEL**

**RUPP, BAASE, PFALZGRAF, CUNNINGHAM & COPPOLA LLC** **DANIEL E. SARZYNSKI, ESQ.**
1600 Liberty Building
424 Main Street
Buffalo, New York 14202-3616
Attorneys for Appellant

**OFFICE OF RICHARD CROAK** **RICHARD CROAK, ESQ.**
314 Great Oaks Boulevard
Albany, New York 12203
Attorneys for Appellee

**OFFICE OF ANDREA E. CELLI** **ANDREA E. CELLI, ESQ.**
350 Northern Boulevard
Albany, New York 12204
Chapter 13 Trustee

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Appellant appeals from the Bankruptcy Court's July 25, 2006 Memorandum-Decision and Order, in which it concluded that "New York Central failed to pay the Debtor's claim as agreed

pursuant to her home owners policy" and "entered [judgment] in the amount of $48,625 in favor of the Debtor and against New York Central." *See* Appellant's Exhibit "A," Bankruptcy Court's Memorandum-Decision and Order dated July 25, 2006, at 9.

The Court heard oral argument in support of, and in opposition to, this appeal on January 26, 2007, and reserved decision at that time. The following constitutes the Court's written disposition of this appeal.

## II. DISCUSSION

### A. Standard of review

Section 158(a) of Title 28 of the United States Code provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees [of the bankruptcy court]; . . ." 28 U.S.C. § 158(a). "When reviewing an appeal from a bankruptcy court's final order, the district court reviews the bankruptcy court's findings of fact for clear error." *In re O'Brien*, 318 B.R. 258, 261 (S.D.N.Y. 2004) (citation omitted). "By contrast, a *de novo* standard of review applies to questions of law." *Id.* (citation omitted).

### B. Bankruptcy Court's factual findings

The Bankruptcy Court made the following factual findings that are relevant to the resolution of this appeal:

> 1. New York Central [Appellant], as insurer, issued a homeowner's insurance policy to Debtor [Appellee], as insured, for her residence, with coverage for the period May 7, 1998 through May 7, 1999.

2. Chase Manhattan Mortgage Group ("Chase") held a mortgage against Debtor's residence.

3. The Policy between New York Central and Debtor contained the following clause establishing a two-year limitation period for commencement of an action against the insurer for claims specified in the Policy: "**Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of the loss."

4. Debtor claimed that fire damaged her residence on November 5, 1998.

5. On July 7, 1999, and again on March 30, 2000, Debtor submitted Sworn Statements in Proof of Loss to New York Central along with statements as to the full cost of repair and replacement.

6. New York Central settled Debtor's claim in full and, on July 15, 1999, issued a check to Debtor and Chase in the amount of $48,625.

7. On May 23, 2000, New York Central issued a second check to Debtor and Chase in the amount of $48,625 as a replacement for the settlement check it had issued on July 15, 1999.

8. Both checks were clearly marked that they were "VALID 6 MONTHS ONLY."

9. Debtor commenced an adversary proceeding against Chase and New York Central on January 6, 2003, after the two-year limitation period in the Policy had expired.

*See* Bankruptcy Court's Memorandum-Decision and Order at 2-3.[1]

After reviewing the entire record, the Court concludes that none of these factual findings are clearly erroneous and, therefore, the Court adopts them for purposes of resolving this appeal.

---

[1] The Bankruptcy Court made these factual findings after reviewing "the parties' pleadings, memoranda, submitted documents, and stipulation of facts ("Stip. of Facts") (Doc. No. 37), and having taken judicial notice of certain other facts already in the record . . . ." *See* Bankruptcy Court's Memorandum-Decision and Order at 2. The parties do not dispute any of the above-cited factual findings.

**C. Conclusions of Law**

***1. Waiver and estoppel***

The parties do not dispute the fact that Appellee filed this action after the Policy's two-year statute-of-limitations period had expired. Thus, to maintain a breach-of-contract claim based upon Appellant's alleged breach of the Policy's terms, Appellee must establish that Appellant either waived its right to assert a statute-of-limitations defense or that the Court should estop Appellant from relying on this defense because of its actions.

In *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966 (1988), the New York Court of Appeals held that "[e]vidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, without more, sufficient to prove waiver or estoppel . . . ." *Id.* at 968 (internal citations omitted). In an apparent attempt to provide "the more" that *Gilbert Frank Corp.* requires to prove waiver or estoppel, Appellee points to the following: (1) Appellant settled her claim in full prior to the expiration of the limitations period and (2) the second settlement check, which Appellant tendered on May 23, 2000, included the endorsement – "VALID 6 MONTHS ONLY" – which meant that she had until November 23, 2000, eighteen days after the expiration of the limitations period, to present the check for payment. Appellee argues that these facts lulled her into believing that Appellant would not invoke a statute-of-limitations defense.

The law in New York is very clear that even evidence that an insurer and its insured continued to communicate, to investigate a claim, or to engage in settlement negotiations after the limitations period expired is insufficient to show waiver or estoppel. The courts have consistently held that this rule exists because "[w]aiver is an intentional relinquishment of a

known right and should not be lightly presumed . . . ." *Gilbert Frank Corp.*, 70 N.Y.2d at 968 (internal citations omitted). It is not so clear, however, whether an insurance company has waived its right to or should be estopped from asserting a statute-of-limitations defense in a situation, such as the one present here, where the insurance company and its insured settle a claim in full prior to the expiration of the policy's limitations period. The Court need not resolve this issue, however, because even assuming that Appellant did not waive its statute-of-limitations defense under the Policy, the parties' settlement of Appellee's claim in full created a separate set of obligations, to which the parties were bound.

***2. Breach of contract***

As noted, the parties reached a complete settlement of Appellee's claim and, under the terms of that settlement, Appellant agreed to pay, and Appellee agreed to accept, $48,625 in full settlement of Appellee's claim. The Court agrees with Appellee that this agreement constitutes an entirely separate contract between the parties, *cf. Kittle v. Continental Ins. Co.*, 240 A.D.2d 263, 264 (1st Dep't 1997), independent of the Policy, which, under New York law, is subject to a six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(2).[2] Accordingly, the Court must determine whether Appellant breached its obligations under the settlement agreement.

"Under New York law, 'an action for breach of contract requires proof of (1) a contract;

---

[2] It is unclear from the record when the parties entered into the settlement agreement, pursuant to which Appellant issued the two settlement checks. However, the Court need not resolve this issue because, even if the Court were to assume that the parties settled the claim on the date that Appellant issued the first settlement check, July 15, 1999, the six-year statute-of-limitations period would not have expired until July 15, 2005, and Appellee commenced her adversary proceeding on January 6, 2003, well within that period.

(2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quotation omitted). The only element at issue in this appeal is the third one – whether Appellant breached the contract, i.e., the settlement agreement, between the parties. Specifically, the issue boils down to whether Appellant's act of tendering two checks to Appellee in full settlement of her claim constitutes payment of that claim.

Appellant's argument that the Bankruptcy Court's reliance upon *Sea-Land Serv., Inc. v. Barry*, 41 F.3d 903 (3d Cir. 1994), to support its conclusion that Appellant had not "paid" the claim was misplaced has some initial appeal. At first glance, unlike the footnote upon which the Bankruptcy Court relied, the holding in *Sea-Land* appears to support Appellant's argument that it paid the claim when Appellee received the settlement check. However, upon closer examination, this is not the case because the actual issue in *Sea-Land* was not what constituted "payment" for purposes of the Longshore and Harbor Workers' Compensation Act ("the Act"), although that is the issue that the footnote addressed, but rather, whether payment was timely under the Act.

In order to resolve the issue of timeliness, the *Sea-Land* court first had to decide whether, for purposes of the Act, "payment" is made when the payor mails the check or when the payee receives the check. The court began its analysis by noting that Section 14(f) of the Act requires the addition of a 20 percent penalty if the employer does not pay compensation within "'ten days *after it becomes due'* . . . ." *Sea-Land*, 41 F.3d at 908 (quotation omitted). The court then went on to reject the employer's argument that "compensation under the Act is 'paid' when the check is mailed not when it is received by the claimant . . . ." *Id.* at 909. The court explained that it had previously stated that """[p]ayment" on a check that is not postdated is effective as of the date the

check is *delivered*,' *Staff Builders, Inc. v. Koschitzki*, 989 F.2d 692, 695 (3d Cir. 1993)." *Id.* The court also noted that its adoption of the "receipt" rule as a measure of the **timeliness** of the payment was "consistent with the general common law principle that '[p]ayment is not effectuated by sending the amount due to the creditor by mail or other public carrier until the remittance gets into the hands of the creditor.'" *Id.* (quotation omitted). Finally, the court stated that, although it was "not unsympathetic to Sea-Land's assertion of the unfair and often impractical results of penalizing an employer for circumstances which may be well beyond the employer's control . . . [s]uch equitable complaints are not new, and although [the court is] sympathetic, [it is] bound by the statute before [the court]." *Id.* at 909-10.

In addition to its holding regarding the timeliness of the payment, the *Sea-Land* court also included the following footnote, upon which the Bankruptcy Court relied for its decision that Appellant had not paid Appellee's claim even though there was no question that Appellant had tendered two settlement checks, both of which Appellee received.

> Our definition of "payment" is also informed by the New York decisions construing that term because the compensation award was mailed to [the claimant] at his New York address. *See South American Petrol. Corp. v. Columbian Petrol. Co.*, 177 Misc. 756, 31 N.Y.S.2d 771, 773-74 (N.Y. Sup. Ct. 1941). **Under New York law, a check is not considered absolute payment until it is honored by the drawee bank.** *Demerritt v. Levitt*, 71 A.D.2d 757, 419 N.Y.S.2d 319, 320 *appeal denied* 48 N.Y.2d 607, 423 N.Y.S.2d 1025, 399 N.E.2d 955 (1979).
>
> Once a check has been paid by the drawee bank, the date of payment for purposes of timeliness relates back to the date the check was *received* by the payee, not the date of mailing. *Duke v. Sun Oil Co.*, 320 F.2d 853, 861 (5th Cir. 1963).

*Sea-Land*, 41 F.3d at 909 n.6 (emphasis added).[3]

In *Duke v. Sun Oil Co.*, 320 F.2d 853 (5th Cir. 1963), which the *Sea-Land* court cited in its footnote, the court offered a rationale for the rule that a check does not constitute absolute payment until the drawee bank honors it. The court explained that

> [a] check is simply a written order on a bank, executory in nature, instructing the bank to make certain payment, as so far as the payee's rights against the drawee are concerned, this order may be revoked by the drawer at any time before the check is paid or in some manner accepted by the bank on which it is drawn.

*Id.* at 861 (footnote omitted).

The court further explained that "[t]his is a sensible result . . . [because] [i]f the check is dishonored on presentment to the drawee, no timely 'payment' has been made." *Id.* at 861-62.

Applying these legal principles to the facts of this case, the Court concludes that, even though Appellant tendered two settlement checks to Appellee and Appellee admittedly received those checks, Appellant has not "paid" Appellee the $48,625 that it agreed to pay her under the terms of their agreement to settle her claim. Accordingly, the Court holds that Appellant breached its obligations under its settlement agreement with Appellee.[4]

---

[3] Thus, despite Appellant's assertion that *Sea-Land*'s holding supports its argument that it paid Appellee because she received the settlement checks, this is not the case. At best, *Sea-Land* supports the proposition that, had Appellee presented the checks to the bank for payment and had the bank honored those checks, payment would have been complete on the date that Appellee received the checks. However, in this case, Appellee never presented either of the settlement checks to the bank for payment and, thus, under New York law, Appellant never "paid" Appellee's claim.

[4] The Court disagrees with Appellant's argument that "[i]f this Court were to affirm the bankruptcy court's holding that [Appellant] did not pay [Appellee's] claim as agreed, such a holding could force insurers to keep their claim files open indefinitely, while the policyholder takes his/her time in deciding whether to cash a settlement check." *See* Appellant's

(continued...)

## III. CONCLUSION

After carefully reviewing the Bankruptcy Court's decisions, the parties' submissions and oral arguments, the relevant parts of the record and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Bankruptcy Court's July 25, 2006 Memorandum-Decision and Order, holding that Appellant failed to pay Appellee's claim and entering judgment in the amount of $48,625 in favor of Appellee is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: February 26, 2007
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[4](...continued)
Memorandum of Law at 8. Appellant further asserts that "[s]uch a decision would create an unnecessary administrative burden on insurance companies. Such a decision also could eliminate an insurer's ability to assert a statute of limitations or contractual limitations defense." *See id.* The Court thinks that Appellant protests too much. Appellant has suffered no injury in this case. It agreed to settle Appellee's claim for $48,650. The Court's decision simply holds Appellant to the terms of that agreement. Moreover, Appellant is not without recourse when an insured, such as Appellee, "takes his/her time in deciding whether to cash a settlement check" as its conduct in this case demonstrates. Appellant stopped payment on the first settlement check when Appellee did not present it for payment after six months. It could have taken the same action with respect to the second settlement check. Finally, despite Appellant's assertion to the contrary, the Court's decision does not eliminate Appellant's ability to assert a statute-of-limitations defense. Appellee's claim under the settlement agreement is a contractual claim; and, therefore, Appellant can assert a statute-of-limitations defense to any claims that it breached such an agreement if an insured does not commence an action within the six-year statute-of-limitations period.